**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KEITH JOHNSON, | : | NO.  3:03CV-0069 (CFD) |
| *Plaintiff,* | : | |
| | | |
| V. | : | |
| | | |
| JAMES KEENEY, | : | |
| *Defendant.* | : | APRIL 26, 2004 |

**DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the defendant respectfully requests that summary judgment be issued in his favor.  There remains no genuine issue of material fact to be tried in this matter because:

1.  The facts known to the defendant and included in the affidavit at the time he submitted the arrest warrant application for the plaintiff established probable cause for his arrest;

2.  No material fact was omitted from the affidavit;

3.  In consummating the arrest, the defendant did not transgress upon any right accruing to the plaintiff's benefit grounded in the Eighth Amendment to the U.S. Constitution;

4.  The charges for which the plaintiff claims to have been falsely arrested were not terminated in a manner favorable to him; and

5.  The defendant is entitled to qualified immunity for his actions in pursuing the plaintiff's arrest.

In support of this motion for summary judgment, the defendants offer the following documents:

a.  Affidavit of Trooper James Keeney, with attachments; and

b.  Affidavit of Assistant State's Attorney Elizabeth Leaming, with attachments.

WHEREFORE, the defendant respectfully requests that summary judgment be issued in his favor.

DEFENDANT
James Keeney

RICHARD BLUMENTHAL
ATTORNEY GENERAL

By: /s/_____
Stephen R. Sarnoski
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, Connecticut 06105
Tel. (860) 808-5450
Federal bar #ct05129
E-mail: stephen.sarnoski@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing motion was mailed this _____ day of _____, _____, to the following:

Keith E. Johnson #272700
MacDougall Correctional Institution
1153 East Street South
Suffield, Connecticut 06080

/s/_____
Stephen R. Sarnoski
Assistant Attorney General

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KEITH JOHNSON,              :       NO.  3:03CV-0069 (CFD)
     *Plaintiff,*            :

V.                   :

JAMES KEENEY,          :
     *Defendant*.          :       APRIL 26, 2004

### STATEMENT OF MATERIAL FACTS AND
### LOCAL RULE 56(a)1 STATEMENT IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(a)1 of the Local Rules of Civil Procedure, the below named defendants respectfully offer the following statement of material facts in support of the motion for summary judgment.

1.  At all times relevant to this lawsuit, the defendant, Trooper James Keeney, was employed as a Connecticut State Police Trooper, and was assigned to the patrol division at the Tolland, Connecticut State Police Barracks (Troop C).  *See* Affidavit of Trooper Keeney, ¶¶ 1-2.

2.  At about 9:00 p.m., on August 27, 2000, Trooper Keeney was assigned to respond to 16 Metcalf Road in Tolland to speak to a Diane Johnson concerning her complaint that her motor vehicle had been taken without her permission.  *See* Affidavit of Trooper Keeney, ¶ 3.

3.  Upon arrival at the Johnson residence, Trooper Keeney spoke with Diane Johnson, a white female, 54 years of age, who explained that her son Keith Johnson, age 19, had taken her white Ford Taurus without her permission at about 6:30 p.m. that evening.  She explained that the vehicle had a new registration plate, and that she did not know the numbers.  *See* Affidavit of Trooper Keeney, ¶ 4.

4.  Standard investigative practice required Trooper Keeney to take a written statement from the complainant to ensure that no mistake was made regarding the status of vehicle in question, and that the complainant wanted the perpetrator arrested.  Trooper Keeney completed a written statement which Diane Johnson read, initialed and signed in his presence.  In the statement, Diane Johnson made it clear that she wished to press charges against her son, Keith Johnson.  *See* Affidavit of Trooper Keeney, ¶ 5.

5.  She also informed Trooper Keeney that her son had taken the vehicle without her permission in the past, and that he had also broken into her home.  She informed Trooper Keeney that Keith Johnson had recently spent 15 months in jail and that he had recently been released.  *See* Affidavit of Trooper Keeney, ¶ 5.

6.  Prior to Trooper Keeney's arrival at the Johnson residence, he received information from his fellow State Police troopers that Diane Johnson had made similar complaints in the past, and had later reneged on her requests to have her son arrested.  As a result of this information, Trooper Keeney resolved to make doubly sure that the statement clearly reflected Diane Johnson's desires with regard to any enforcement action to be taken.  *See* Affidavit of Trooper Keeney, ¶ 6.

7.  After completing the investigation, the vehicle was entered into the State Police computer system as a stolen vehicle, but was later changed to an attempt to locate message.  *See* Affidavit of Trooper Keeney, ¶ 7.

8.  Four days later, on August 31, 2000, Keith Johnson was stopped by the Vernon, Connecticut, Police Department while operating his mother's vehicle.  At that time, Keith Johnson claimed that there was an oral agreement between him and his mother to the effect that

2

he was going to buy the car, and he was making payments on the car. The Vernon police officers contacted the Tolland State Police barracks and informed the State Police that they had stopped a vehicle which the State Police had listed in the computer to be on the lookout for. Trooper Neil Manning was sent to the scene to investigate. Diane Johnson was also contacted by telephone and asked to come to the scene. Trooper Keeney was not on duty at this time, and he was not present during the investigation of Keith Johnson. However, Trooper Keeney learned from Trooper Manning that as a result of the discussions held between Trooper Manning, Diane Johnson, Keith Johnson and the Vernon police officers present, that Keith Johnson was not arrested at the time, but that the car was taken from his custody and returned to his mother, Diane Johnson. Trooper Keeney learned that upon her arrival at the scene, that Diane Johnson reneged upon her previous written statement requesting that Keith Johnson be arrested, and stated instead that she was satisfied with the return of her automobile. *See* Affidavit of Trooper Keeney, ¶ 8.

9. During the course of Trooper Keeney's initial investigation, Diane Johnson made no mention of any arrangement, oral or written, between her and Keith Johnson regarding the purchase of the vehicle in question. To the contrary, Diane Johnson made it crystal clear that she wanted her son arrested for taking her vehicle without her permission. If Diane Johnson had informed Trooper Keeney that she had an arrangement with her son regarding the purchase of the vehicle, and that she just wanted the car back, Trooper Keeney would never have sent a teletype asking that the vehicle be located. Such teletypes are restricted to criminal matters only. *See* Affidavit of Trooper Keeney, ¶ 9.

10. On September 6, 2000, Trooper Keeney telephoned Diane Johnson at her home to speak with her regarding the investigation. During this conversation, Trooper Keeney

3

questioned Diane Johnson as to her motive for telling him that she wanted her son arrested for taking her vehicle without her permission. Trooper Keeney told Diane Johnson that if she gave a false statement to the State Police during the course of an official investigation, that she could be arrested. Trooper Keeney does not recall, however, whether he asked Diane Johnson about an arrangement with her son regarding the purchase of the vehicle, but does recall Diane Johnson telling him that she still wanted her son arrested for taking the vehicle without her permission. Diane Johnson told Trooper Keeney that the information which she had given to him in the initial written statement was accurate. *See* Affidavit of Trooper Keeney, ¶ 10.

11. Based on all of the information which he had received up until that time, Trooper Keeney determined that probable cause existed to support the arrest of Keith Johnson for taking a motor vehicle without the owner's permission. Trooper Keeney completed an arrest warrant affidavit charging Keith Johnson with taking a motor vehicle without the owner's permission. *See* Affidavit of Trooper Keeney, ¶ 10 and Tab B.

12. Trooper Keeney did not include statements in the affidavit describing Keith Johnson's claim that he had an arrangement to buy the vehicle from his mother. According to what he knew, there was no such arrangement, and Trooper Johnson did not think it necessary to include the suspect's uncorroborated account of events in the arrest warrant affidavit. Trooper Keeney also did not state in the arrest warrant affidavit that Diane Johnson did not want her son arrested for this crime. *See* Affidavit of Trooper Keeney, ¶ 11 and Tab B.

13. Sergeant Sam Izzarelli reviewed and notarized Trooper Keeney's arrest warrant application on September 7, 2000. The warrant was approved by the Superior Court on

September 15, 2000, following which the State Police sent out a wanted person teletype for Keith Johnson on September 19, 2000. *See* Affidavit of Trooper Keeney, ¶ 12 and Tab B.

14. On September 25, 2000, Keith Johnson was taken into custody by Trooper Michael Hearn on the basis of this outstanding warrant as well as a second warrant originated by the Manchester Police Department charging Keith Johnson with Failure to Appear in the First Degree for an underlying charge of Larceny in the First Degree. While being processed for the State Police warrant, Trooper Clifford Labbe found Johnson in possession of a stolen check from an another unrelated investigation. He was charged with this offense as well. A $10,000 cash bond was set by the State Police supervisor. Keith Johnson was unable to make this bond. As a result, he was held for arraignment at the next session of the Superior Court. *See* Affidavit of Trooper Keeney, ¶ 13.

15. In accordance with State Police procedure, Trooper Keeney completed an investigative report into the entire incident, and filed this report along with a copy of the arrest warrant affidavit in the Reports and Records Division at State Police headquarters. *See* Affidavit of Trooper Keeney, Tabs A and B.

16. The charges against Keith Johnson were assigned to be prosecuted by Assistant State's Attorney Elizabeth Leaming at the Rockville, Connecticut Courthouse in the Tolland Judicial District, Connecticut Superior Court along with a series of other criminal prosecutions involving the plaintiff as follows:

a. Docket No. CR01- 72678: Burglary 3rd Degree and Larceny 6th Degree pertaining to the burglary of Keith Johnson's mother's home at 16 Metcalf Road in Tolland Connecticut on or about September 18, 2000;

b.  Docket No. CR00-71808:  Larceny 6th Degree pertaining to the theft of a blank personal check on or about September 26, 2000;

c.  Docket No. CR01-72677:  Failure to Comply With Fingerprinting requirements during the course of another criminal arrest on or about January 10, 2001;

d.  Docket No. CR01-73711: Two counts of Forgery, two counts of Issuing Bad Checks and Larceny in the Fourth Degree related to attempts to cash several stolen checks on or about September 21, 2000;

e.  Docket No. CR01-72742: Burglary in the Third Degree and Larceny in the Third Degree related to a residential burglary in the Town of  Tolland on or about September 21, 2000;

f.  Docket No. CR00-72144:  Two counts of Larceny in the Fourth Degree and two counts of Forgery in the Third Degree related to the cashing of several stolen checks at the Tolland Bank in Tolland, Connecticut, on or about August 23, 2000.

g.  Docket No. CR00-71802:  One count of Taking A Motor Vehicle Without the Owner's Permission related to the unauthorized use of his mother's automobile on August 27, 2000, and for several days thereafter.

h.  Docket No. CR01-72679:  One count of Sexual Assault in the First Degree and one count of Impairing the Morals of a Minor involving an allegedly inappropriate relationship on the part of Keith Johnson with his niece during April of 1997.

*See* Affidavit of Elizabeth Leaming, ¶¶ 1-3.

17.  The defendant, Keith Johnson, was represented by Special Public Defender, Attorney Raul Davila-Carlos on all of these files.  Through negotiation, the State of Connecticut and Keith Johnson reached a plea agreement resolving all of his outstanding criminal charges.  The

6

agreement provided (1) that Keith Johnson would plead guilty to Burglary in the Third Degree and Larceny in the Third Degree on Docket No. CR01-72742; (2) that Keith Johnson would plead guilty to a substitute information of Larceny in the Fourth Degree and Forgery in the Third Degree on Docket No. CR00-72144; and (3) that Keith Johnson would plead guilty to two counts of Forgery in the Second Degree and one count of Larceny in the Fourth Degree on Docket No. CR01-73711. The plea agreement further provided that the remaining charges on these docket numbers, and all of the charges on Docket Nos. CR01-72678, CR00-71808, CR01-72677, CR00-71802 and CR01-72679 would be nolled. Finally, the plea agreement called for Keith Johnson to be sentenced to an effective sentence of two years on all counts, to be served consecutively to a fourteen year sentence which Keith Johnson was already serving relating to an armed robbery for which he had previously been convicted and sentenced. *See* Affidavit of Elizabeth Leaming, ¶ 4 and court Transcript at Tab A attached thereto.

18. Upon acceptance of the plea agreement, the remaining charges lodged against Keith Johnson were nolled and thereafter dismissed by the Court. *See* Affidavit of Elizabeth Leaming, ¶ 5.

DEFENDANT
James Keeney

RICHARD BLUMENTHAL
ATTORNEY GENERAL


By: /s/_____
Stephen R. Sarnoski
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, Connecticut 06105
Tel. (860) 808-5450
Federal bar #ct05129
E-mail: stephen.sarnoski@po.state.ct.us


## **CERTIFICATION**

I hereby certify that a copy of the foregoing motion was mailed this _____ day of

_____, _____, to the following:

Keith E. Johnson #272700
MacDougall Correctional Institution
1153 East Street South
Suffield, Connecticut 06080


/s/_____
Stephen R. Sarnoski
Assistant Attorney General

8

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEITH JOHNSON, | : | NO.  3:03CV-0069 (CFD) |
| *Plaintiff,* | : | |
| | | |
| V. | : | |
| | | |
| JAMES KEENEY, | : | |
| *Defendant*. | : | APRIL 26, 2004 |

## MEMORANDUM OF LAW
## IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by the plaintiff, Keith Johnson, against the defendant, Connecticut State Police Trooper James Keeney.  The plaintiff alleges that Trooper Keeney violated his rights under the Fourth and Eighth Amendments to the U.S. Constitution by submitting a false and misleading arrest warrant affidavit, causing him to be thereafter arrested without probable cause for taking a motor vehicle without the owner's permission in violation of Connecticut penal statutes.  The instant motion seeks summary judgment in favor of the plaintiff for the reasons articulated herein as more fully explained in this memorandum of law.

## STANDARD OF REVIEW
## ON SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) requires the entry of Summary Judgment ". . .  if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A "material fact" is one whose resolution will affect the ultimate determination of the case. *Id.* In determining whether a material issue of fact exists, the court must resolve all ambiguities and draw all inferences against the moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513; *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact*." Samuels v. Smith,* 839 F.Supp. 959, 962 (D.Conn. 1993).

Despite the above, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256, 106 S.Ct. at 2510; *see also, Knight v. United States Fire Insurance Co.,*, 804 F.2d 9, 12 (2d Cir. 1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 763 (1987); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). Thus, once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, and answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 265 (1986). "Neither courts nor defendants should be subjected to trials which can be little more than harassment." *Applegate v. Top Associates, Inc.*, 425 F.2d 92, 96 (2d Cir. 1970).

When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to the case which it bears the burden of proving at trial. *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987). Where evidence is submitted in support of, or in opposition to, a motion for summary judgment, such evidence must be presented in a manner consistent with its admissibility at trial. *See First National Bank Co. of Clinton, Ill. v. Insurance Co. of North America*, 606 F.2d 760 (7th Cir. 1979) (in ruling on summary judgment motion, the District Court properly relied on documents and exhibits identified by affidavit). Unsworn statements of the parties, letters addressed to litigants from third persons, and hearsay which does not fall under one or more of the exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not properly be considered. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Beyene v. Coleman Security Service, Inc.,* 854 F.2d 1179 (9th Cir. 1988); *Edward B. Marks Music Corp. v. Stasny Music Corp.*, 1 F.R.D. 720 (S.D.N.Y. 1941).

## ARGUMENT

### I.    THE PLAINTIFF'S FALSE ARREST ACTION IS PRECLUDED BECAUSE THE UNDERLYING PROSECUTION WAS NOT UNEQUIVOCALY TERMINATED IN HIS FAVOR.

One of the necessary elements that a plaintiff must prove in a civil rights action in which it is claimed that a warranted arrest was made without probable cause is that the criminal charges were resolved in his favor. Thus, "a person who thinks that there is not even probable cause to believe he committed the crime(s) with which he is charged must prove that he pursued the criminal case to an acquittal or an *unqualified* dismissal, or else waive his § 1983 claim."

3

*Roesch v. Otarola,* 980 F.2d 850, 853 (2d Cir. 1992) (emphasis supplied).  To meet this standard, it is not necessary that an accused have been acquitted in order to for a claim of false arrest to survive.  Rather, it is sufficient that the accused was "discharged without a trial under circumstances amounting to an abandonment of the prosecution without request or arrangement with him."  *Haynes v. City of New London,* 2002 U.S. Dist. LEXIS 10366 at 5 (D.Conn. 2002), *quoting See v. Gosselin,* 133 Conn. 158, 160, 48 A.2d 560 (Conn. 1946).  The plaintiff has failed to meet this standard under the facts if this case.

While this standard does not necessarily preclude every false arrest claim where the underlying matter is nolled and later dismissed, *see Colon v. Ludemann,* 283 F.Supp.2d 747 (D.Conn. 2003), it does encompass claims where (1) the plaintiff received the benefit of Connecticut's accelerated pretrial rehabilitation program, *Roesch v. Otarola, supra;* (2) the plaintiff agreed to make a charitable contribution once charges against him were nolled, *Birdsall v. City of Hartford,* 249 F.Supp.2d 163 (D.Conn. 2003); (3) the plaintiff accepted a nolle of the charges originally filed against him in return for a guilty plea upon a lesser charge or charges via substituted information, *see Bacchiocchi v. Chapman,* 2004 U.S. Dist. LEXIS 1077 (D.Conn 2004) and, most applicable to the instant case, (4) where the plaintiff pleaded guilty to certain charges in return for a nolle and eventual dismissal on one or more other charges in other pending cases which might have been prosecuted absent a plea agreement, *see White v. Wortz,* 66 F.Supp.2d 331  (D.Conn. 1999).  It is of less importance that the charges in question were nolled or dismissed than it is that those charges which were dropped were done so as the result of a cooperative arrangement between the prosecuting authority and the criminal defendant.  The fact that the defendant was unaware that by accepting the plea agreement he would thereafter be

precluded from pursuing a false arrest claim as to the charges which were not pursued is immaterial as the standard admits of no state-of-mind requirement. *Birdsall,* 249 F.Supp.2d at 171.

In the instant case, the affidavit of Assistant State's Attorney Elizabeth Leaming makes it clear that the charge of taking a motor vehicle without the owner's permission was nolled and subsequently dismissed only as part of a larger plea agreement between the State of Connecticut and the plaintiff. The transcript lists the charges for which the plaintiff pleaded guilty, and indicated that all of the remaining charges against him on the jury docket for the day in question were to be nolled then dismissed. As such, the plaintiff has failed to demonstrate that the charges in question were resolved in a manner favorable to him as required by the prevailing legal standards. The defendant is, therefore, entitled to summary judgment on the false arrest claim.

II. **THE DEFENDANT IS NOT LIABLE TO FOR FALSE ARREST BECAUSE, EVEN WHEN CORRECTED, THE ARREST WARRANT AFFIDAVIT CONTAINED SUFFICIENT PROBABLE CAUSE TO SUPPORT THE PLAINTIFF'S ARREST.**

The standards applicable to claims of constitutional violations based upon allegations that the defendant police officers submitted false and misleading affidavits, devoid of probable cause, in support of search and arrest warrants are well-settled.

The Fourth Amendment to the United States Constitution provides that no person may be subjected to unreasonable seizures. This protection includes the right to be free from searches unsupported by probable cause, as well as the right to be free from arrests without probable cause. *Weyant v. Okst,* 101 F.3d 845, 852 (2nd Cir. 1996). On the other hand, there can be no federal civil rights claim for false arrest where the arresting officer had probable cause. The

existence of probable cause to arrest is a complete defense to an action for false arrest.  *Id.,* 101 F.3d at 852 (internal citations and quotations omitted).  Probable cause exists "where 'the facts and circumstances . . . [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States,* 338 U.S. 160, 175-76, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949) (quoting *Carroll v. United States,* 267 U.S. 132, 162, 69 L. Ed. 543, 45 S. Ct. 280 (1925)).  To decide whether probable cause exists, a judicial officer must examine the totality of  the circumstances.  *Illinois v. Gates,* 462 U.S. 213, 238, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983).  The quantum of evidence required to establish probable cause to arrest need not reach the level of evidence necessary to support a conviction. *United States v. Fisher,* 702 F.2nd 372, 375 (2nd Cir. 1983).

  The issuance of a warrant for the plaintiff's arrest creates a presumption that it was objectively reasonable for the defendant police officers to believe that there was probable cause to support it.  *See, e.g., Golino v. City of New Haven,* 950 F.2nd 864, 870 (2nd Cir. 1991), *cert. denied,* 505 U.S. 1221, 120 L. Ed. 2d 902, 112 S. Ct. 3032 (1992).  In the criminal context, a defendant can overcome the presumption of probable cause afforded by a warrant by demonstrating that 1) the affiant either intentionally or with reckless disregard for the truth made a false statement in his warrant application and 2) the neutral magistrate would not have issued the warrant but for the false statement.  *Franks v. Delaware,* 438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978).  This *Franks* analysis has been applied to civil cases involving a challenge to the presumption of qualified immunity afforded by a warrant.  *See, e.g., Smith v. Edwards,* 175 F.3d 99, (2nd Cir. 1999); *Magnotti v. Kuntz,* 918 F.2nd 364, 368 (2nd Cir. 1990); *Willocks v. Dodenhoff,* 110 F.R.D. 652, 655-59 (D. Conn. 1986).  Presumptively, the same

standard would apply in civil cases where, as here, the defendants also claim that the corrected warrant affidavit, in fact, established probable cause to support the contested arrest.  *See McBride v. City of New Haven,* 2000 U.S. Dist. LEXIS 15964, p. 10-11 (D.Conn. 2000).

Before a § 1983 plaintiff may mount a *Franks* challenge, he must first make a "substantial preliminary showing" that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the alleged false statement was "necessary to the finding of probable cause." *Franks, supra,* 438 U.S. at 155-56. Unsupported conclusory allegations of falsehood or material omission cannot support a *Franks* challenge.  To mandate a hearing, the plaintiff must make specific allegations accompanied by an offer of proof. *Zandhri v. Dortenzio,* 2002 U.S. Dist. LEXIS 21048, pp. 22-23 (D.Conn. 2002), *citing Franks v. Delaware, supra,* 438 U.S. at 171.  Moreover, when police officers move for summary judgment on the basis of qualified immunity, plaintiffs may not unwrap a public officer's cloak of immunity from suit simply by alleging even meritorious factual disputes relating to probable cause, when those controversies are nevertheless immaterial to the ultimate resolution of the immunity issue*. Id., citing Cartier v. Lussier,* 955 F.2d 841, 845 (2nd Cir. 1992).  Disputed issues are not material if, after crossing out any allegedly false information and supplying any omitted facts, the "corrected affidavit" would have supported a finding of probable cause. *Velardi v. Walsh,* 40 F.3d 569, 573-74 (2nd Cir 1994), *citing Soares v. State of Connecticut,* 8 F.3d 917, 920 (2nd Cir. 1993); *Cartier, supra,* 955 F.2d at 845. *See also, State of Connecticut v. Tomasko,* 242 Conn. 505, 518, 700 A.2d 28 (1997) ("Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different").

In addition, in order to establish a *Franks* violation, a plaintiff is required to make a showing of intent, *i.e.,* a "deliberate falsehood" or "reckless disregard for the truth." *Franks, supra,* 438 U.S. at 171. *Franks* recognizes that information an affiant reports may not ultimately be found to be accurate, and is nonetheless willing to tolerate such a result at that early stage of the process, so long as the affiant believed the accuracy of the statement at the time it was made. *Id.,* 438 U.S. at 165. Because the consequences of arrest or search are less severe and easier to remedy than the consequences of an adverse criminal verdict, a duty to disclose potentially exculpatory information appropriate in the setting of a criminal trial to protect the due process rights of the accused is less compelling in the context of an application for a warrant. *Mays v. City of Dayton,* 134 F.3d 809, 816 (6th Cir. 1998). Except in the *very* rare case where a plaintiff makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts. *Id.* (emphasis in original).[1] Thus, while not immune from a *Franks* inquiry, affidavits with potentially material omissions are much less likely to merit a *Franks* hearing than are affidavits which allegedly include false statements. *Id., citing U.S. v. Atkins,* 107 F.3d 1213, 1217 (6th Cir. 1997).

Here, the plaintiff rests his case on two facts which, he claims, Trooper Kenney should have included in his arrest warrant affidavit. First, the plaintiff claims that he had an oral arrangement with his mother whereby he would make payments to his mother in contemplation

---

[1] Courts have applied the *Franks* analysis to omissions of information from warrant affidavits as well. *See Mays v. City of Dayton, supra.* However, where the constitutional claim arises from alleged material omissions from warrant affidavits, a much stricter level of scrutiny applies. This is so because allowing omissions to be challenged on the same footing as that of false statements included in the warrant would create a situation where almost every affidavit of an officer would be questioned. *Mays, supra,* 134 F.2d at 815.

of buying her vehicle, and that she would permit him to drive the car while so doing.  However, evidence of this "arrangement" between the plaintiff and his mother is completely absent from the signed, written statement which Diane Johnson gave to Trooper Keeney when she first reported the taking of her vehicle and asked for her son to be arrested.  The arrangement, if in fact it existed at all, was never mentioned to the police until the suspect did so after having been stopped in possession of his mother's vehicle.  The facts known to Trooper Keeney, as evidenced in the written statement taken from the victim, established probable cause to arrest the plaintiff for the offense of taking his mother's vehicle without her permission.  *See, e.g., Lee v. Sandberg*, 136 F.3d 94, 103 (2d Cir. 1997) (If policemen arrest a person on the basis of a private citizen's complaint that if true would justify the arrest, and they reasonably believe it is true, they cannot be held liable merely because it later turns out that the complaint was unfounded).  Although the plaintiff was not arrested at that time, the vehicle was removed from his possession and returned to his mother while trooper Keeney continued his investigation.

Second, the plaintiff insists that Trooper Keeney should have mentioned in his arrest warrant affidavit the fact that his mother, Diane Keeney, changed her mind and declined to press charges against her son once the car had been returned.  This fact, however, is immaterial to the formulation of probable cause to support the plaintiff's arrest.  Consent of the putative victim for the prosecution of the alleged perpetrator is not, and never has been, a necessary element of the offense of taking a motor vehicle without the owner's permission under Connecticut General Statutes § 53a-119b which provides, in relevant part, as follows:

**§ 53a-119b. Using motor vehicle or vessel without owner's permission.**

9

> (a) A person is guilty of using a motor vehicle without the owner's permission when: (1) He operates or uses, or causes to be operated or used, any motor vehicle unless he has the consent of the owner; or (2) he obtains the consent of the owner to the use of his motor vehicle by fraud or fraudulent means, statement or representations.

A fair reading of the statutory language of § 53a-119b makes two things clear: (1) permission of the victim for the prosecution of the alleged offender is not an element of the crime; and (2) Johnson's apparent failure to uphold the oral agreement he claims to have existed between himself and his mother for the purchase of her vehicle, assuming the existence of intent obtain access to his mother's automobile by fraudulent means, is anything but exculpatory in nature.

Police officers who have probable cause to arrest also have no affirmative duty to hear and consider conflicting versions of the alleged offense presented by the suspect. The fact that the person to be arrested, if he had been asked, might have denied the allegation of wrongdoing is of no significance to a police officer's formulation of probable cause. There is no requirement that an officer otherwise possessed of probable cause to arrest an individual must question and weigh the suspects' version of the incident prior to making the arrest. Although police officers must exercise judgment in assessing the existence or non-existence of probable cause in any given situation, they are not required to arbitrate the matter with the suspect. *See Rivera v. Granucci,* 1993 U.S. Dist. LEXIS 3264 at 4 (D. Conn. 1993); *McBride v. City of New Haven,* 2000 U.S. Dist. LEXIS 15964 (D.Conn. 2000).

Similarly, the "facts" which the plaintiff alleges should have been included in the arrest warrant affidavit are neither exculpatory nor material to the question of probable cause. While a prosecutor may legitimately consider whether the victim wishes to press charges in her

determination of whether to devote the scarce resources of the state to a particular prosecution, that determination is one of policy, not of law, and falls outside of the parameters of the constitutional justification for depriving an individual of his/her liberty with which this case is concerned. No correction of Trooper Keeney's arrest warrant affidavit is required. No fact material to the determination of probable cause was omitted therefrom. Trooper Keeney is, therefore, entitled to summary judgment.

### III.    THE PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST THE DEFENDANT FOR VIOLATION OF HIS RIGHTS UNDER THE EIGHTH AMENDMENT TO THE U.S. CONSTITUTION.

The plaintiff's Eighth Amendment claim must also fail. Eighth Amendment scrutiny begins only after the state has secured a formal adjudication of guilt. *See Bell v. Wolfish,* 441 U.S. 520, 535, n.16, 60 L.Ed.2d 447, 99 S.Ct. 1861 (1979) (noting that when a state seeks to impose punishment on a pre-trial detainee without such an adjudication, the pertinent constitutional provision is the Due Process Clause of the Fourteenth Amendment). *See also, Powell v. Gardner,* 891 F.2d 1039, 1044 (2nd Cir. 1979) (the Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer).

Here, the plaintiff claims, to the contrary, that the charges lodged against him were dismissed without any formal finding of guilt. As such, the Eighth Amendment is not implicated in the facts of this case as alleged. Accordingly, the plaintiff has failed to state a claim upon which relief can be granted against the defendant for violation of his rights under the Eighth Amendment.

## II.    THE DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY FOR HIS ACTIONS AS ALLEGED IN THE PLAINTIFF'S COMPLAINT.

The shield of qualified immunity generally protects government officials from liability for damages on account of their performance of discretionary official functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir. 1998). The availability of the defense turns upon the "objective legal reasonableness" of the allegedly unlawful official action, "assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting *Harlow v. Fitzgerald,* 457 U.S. at 818-19, 102 S.Ct. at 2739). *See also, Glass v. Mayas,* 984 F.2d 55, 57 (2d Cir. 1993). The qualified immunity defense is intended to "strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Lee v. Sandberg,* 136 F.3d 94, 100 (2d Cir. 1997) (citations omitted). The rule serves to protect government officials from charges that they knowingly violated standards that were in fact unknowable." *Havekost v. U.S. Dept. of Navy,* 925 F.2d 316 (9th Cir. 1991) (citations omitted).

Because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 252

(2001), *citing Mitchell v. Forsyth,* 472 U.S. 511, 526, 86 L.Ed. 2d 411, 105 S. Ct. 2806 (1985).

The privilege is "an immunity from suit rather than a mere defense to liability; and like an

absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.,* 533

U.S. at 201.  As a result, the Court has repeatedly stressed the importance of resolving immunity

questions at the earliest possible stage in litigation.  *Id., citing Hunter v. Bryant,* 502 U.S. 224,

227, 116 L. Ed. 2d 589, 112 S. Ct. 534 (1991) (*per curiam*).

     In a suit against an officer for an alleged violation of a constitutional right, the requisites

of a qualified immunity defense must be considered in proper sequence.  According to *Saucier*, a

court required to rule upon the qualified immunity issue must first consider this threshold

question: Taken in the light most favorable to the party asserting the injury, do the facts alleged

show the officer's conduct violated a constitutional right?  *Id., citing Siegert v. Gilley,* 500 U.S.

226, 232, 114 L. Ed. 2d 277, 111 S. Ct. 1789 (1991).  As explained by the Court in *Saucier,*

> In the course of determining whether a constitutional right was
> violated on the premises alleged, a court might find it necessary to
> set forth principles which will become the basis for a holding that a
> right is clearly established. This is the process for the law's
> elaboration from case to case, and it is one reason for our insisting
> upon turning to the existence or nonexistence of a constitutional
> right as the first inquiry.   The law might be deprived of this
> explanation were a court simply to skip ahead to the question
> whether the law clearly established that the officer's conduct was
> unlawful in the circumstances of the case.

*Id.,* 533 U.S. at 201.

     If no constitutional right would have been violated were the allegations established,

*Saucier* instructs that there is no necessity for further inquiries concerning qualified immunity.

On the other hand, if a violation could be made out on a favorable view of the parties'

submissions, the next, sequential step is to ask whether the right was clearly established.  *Id.,* 501

U.S. at 201.  This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable.  As more fully articulated by the U.S. Supreme Court in *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002),

> Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful.  For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.,* 536 U.S. at 739, (internal citations and quotations omitted).  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *Saucier v. Katz, supra.*  If the law did not put the officer on notice that his conduct would be clearly unlawful, judgment based on qualified immunity is appropriate.  *Id.*

Of course, there is no definitive guide as to when a right is clearly established.  Thus, while the defendants do not question the existence of a suspect's Fourth Amendment right to be free from unreasonable seizure generally,

> the relevant inquiry is not whether the defendants should have known that there was a federal right, in the abstract ..., but whether the defendants should have known that the specific actions complained of violated  ... [that right].  Such an inquiry requires that a court define the constitutional right with some specificity.  If the right is defined too broadly, plaintiff would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.

14

*Lewis v. Cowen,* 165 F.3d 154, 167 (2d Cir. 1999) (internal quotations and citations omitted).  In the absence of controlling precedent, decisions from other circuits must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.  *Marsh v. Arn,* 937 F.2d 1056, 1068 (6th Cir. 1991) (citations omitted).[2]

Assuming that the factual allegations in a particular case demonstrate that there exists an underlying constitutional right, and that this right was clearly established in a particularized sense at the time the defendants acted, the final inquiry which must be undertaken in the qualified immunity analysis is the question of whether, despite the nature of the constitutional right at issue, a reasonable officer could have been mistaken as to the legal constraints upon his conduct.  If such a mistake as to the legal constraints upon his conduct was objectively reasonable, the defendant is nonetheless entitled to qualified immunity.

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [governmental] conduct.  It is sometimes difficult for an [official] to determine how the relevant legal doctrine [...] will apply to the factual situation the [official] confronts.  If the [official's] mistake as to what the law requires is reasonable, however, the [official] is entitled to the immunity defense.

---

[2]   As stated by the Second Circuit in *Poe v. Leonard,* 282 F.3d 123 (2nd Cir. 2002), "[i]t is unclear the extent to which we may rely on the case law of other circuits to determine whether the law was clearly established." *Id.,* 282 F.3d at 141, n. 15.  Accordingly, in those cases where the Second Circuit has relied upon the law established in other circuits as a guide for its own legal analysis, it has done so only where our precedent had foreshadowed the development of the relevant standards that other circuits had clearly established. *Id., citing Varrone v. Bilotti,* 123 F.3d 75 (2d Cir. 1997).

*Saucier v. Katz, supra.  See also, Malley v. Briggs,* 475 U.S. 335, 343, 89 L.Ed.2d 271, 106 S.Ct. 1092 (1986) (qualified immunity leaves ample room for mistaken judgments).  Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law, or those who act where "the law clearly proscribed the actions" taken."  *Saucier, supra,* (quoting *Anderson v. Creighton,*  483 U.S. at 638-39).  This aspect of the doctrine of qualified immunity recognizes that law enforcement officers are only human, and inevitably, accidents and mistakes of judgment will happen.  Such mistakes alone do not open officers to personal liability.  *Wren v. Towe,* 130 F.3d 1154, 1159 (5ᵗʰ Cir. 1997), *cert. denied,* 525 U.S. 815, 142 L. Ed. 2d 40, 119 S. Ct. 51 (1998); *accord, Pritchett v. Alford,* 973 F.2d 307, 313 (4ᵗʰ Cir. 1992) ( indicating that qualified immunity affords tolerance for mistakes of judgment traceable to unsettled law, faulty information, or contextual exigencies).  Accordingly,

> In cases involving the conduct of police officials, … even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act . . . .  The objective reasonableness test is met - and the defendant is entitled to qualified immunity - if officers of reasonable competence could disagree on the legality of the defendant's actions . . . .  In qualified immunity cases, we are not concerned with the correctness of the defendants' conduct, but rather with the "objective reasonableness" of their chosen course of action given the circumstances confronting them at the scene . . . . [W]hen the factual record is not in serious dispute . . . [t]he ultimate legal determination whether . . . a reasonable police officer should have known he acted unlawfully is a question of law better left for the court to decide.

*Lennon v. Miller,* 66 F.3d 416, 420-21 (2d Cir. 1995) (quotations and internal citations omitted); *accord, Oliviera v. Mayer,* 23 F.3d 642, 649 (2d Cir. 1994), *cert. denied,* 513 U.S. 1076, 115

S.Ct. 721, 130 L.Ed.2d 627 (1995) (immunity ordinarily should be decided by the court in those cases where the facts concerning the availability of the defense are undisputed).

Analysis of the facts of this case establishes that, at its worst, reasonable officers could differ as to what action should have been taken, and as to whether the actions, in fact, taken by the defendant was appropriate under the totality of the circumstances known to him at the time. None of the information included in the arrest warrant affidavit was incorrect, and no material fact was omitted - based on the information reasonably available to Trooper Keeney at the time he completed the arrest warrant affidavit. Aside from this, it appears that, absent a favorable termination of the prosecution against the plaintiff, Trooper Keeney is entitled to summary judgment on this basis as well.

## CONCLUSION

For all of the foregoing reasons, judgment should be issued in favor of the below named defendant in this matter.

DEFENDANT
James Keeney

RICHARD BLUMENTHAL
ATTORNEY GENERAL


By: /s/_____
Stephen R. Sarnoski
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, Connecticut 06105
Tel. (860) 808-5450
Federal bar #ct05129
E-mail: stephen.sarnoski@po.state.ct.us

17

**<u>CERTIFICATION</u>**

I hereby certify that a copy of the foregoing motion was mailed this _____ day of

_____, _____, to the following:

      Keith E. Johnson #272700
      MacDougall Correctional Institution
      1153 East Street South
      Suffield, Connecticut 06080

                    /s/_____
                    Stephen R. Sarnoski
                    Assistant Attorney General