UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEITH JOHNSON, | : | NO.  3:03CV-0069 (CFD) |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES KEENEY, | : | |
| *Defendant.* | : | APRIL 14, 2004 |

**AFFIDAVIT OF JAMES KEENEY**

I, James Keeney, being of sound mind and legal age, and having been duly sworn, do hereby depose and say:

1. For the purposes of identification, my full name is James Joseph Keeney.  I am currently employed by the State of Connecticut, Department of Public Safety .  I have been so employed for about fourteen years.  I am currently assigned to the patrol division at the Colchester State Police barracks.  I have been so assigned for approximately three years.

2. On August 27, 2000, I held the rank of Trooper First Class and was assigned to the patrol division at the Tolland State Police barracks.

3. At about 9:00 p.m., on August 27, 2000, I was assigned to respond to 16 Metcalf Road in Tolland to speak to a Diane Johnson concerning her complaint that her motor vehicle had been taken without her permission.

4. Upon arrival at the Johnson residence, I spoke with Diane Johnson, a white female, 54 years of age, who explained that her son Keith Johnson, age 19, had taken her white Ford Taurus without her permission at about 6:30 p.m. that evening.  She explained that the vehicle had a new registration plate, and that she did not know the numbers.

5. Standard investigative practice required me to take a written statement from the complainant to ensure that no mistake was made regarding the status of vehicle in question, and that the complainant wanted the perpetrator arrested. I completed a written statement which Diane Johnson read, initialed and signed in my presence. In the statement, Diane Johnson made it clear that she wished to press charges against her son, Keith Johnson. She also informed me that her son had taken the vehicle without her permission in the past, and that he had also broken into her home. She informed me that Keith Johnson had recently spent 15 months in jail and that he had recently been released.

6. Prior to my arrival at the Johnson residence, I had received information from my fellow State Police troopers that Diane Johnson had made similar complaints in the past, and had later reneged on her requests to have her son arrested. As a result of this information, I resolved to make doubly sure that the statement clearly reflected her desires with regard to any enforcement action to be taken.

7. After completing my investigation, the vehicle was entered in to our computer system as a stolen vehicle, but was later changed to an attempt to locate message.

8. On August 31, 2000, Keith Johnson was stopped by the Vernon Police Department while operating his mother's vehicle. At that time, Keith Johnson claimed that there was an oral agreement between him and his mother to the effect that he was going to buy the car, and he was making payments on the car. The Vernon police officers contacted the Tolland State Police barracks and informed us that they had stopped a vehicle which we had listed in the computer to be on the lookout for. Trooper Neil Manning was sent to the scene to investigate. Diane Johnson was also contacted by telephone and asked to come to the scene. I was not on duty at

this time, and I was not present during the investigation of Keith Johnson. However, I learned from Trooper Manning that as a result of the discussions held between Trooper Manning, Diane Johnson, Keith Johnson and the Vernon police officers present, that Keith Johnson was not arrested at the time, but that the car was taken from his custody and returned to his mother, Diane Johnson. I learned that upon her arrival at the scene, that Diane Johnson reneged upon her previous written statement requesting that Keith Johnson be arrested, and stated instead that she was satisfied with the return of her automobile.

    9. During the course of my initial investigation, Diane Johnson made no mention of any arrangement, oral or written, between her and Keith Johnson regarding the purchase of the vehicle in question. To the contrary, Diane Johnson made it crystal clear that she wanted her son arrested for taking her vehicle without her permission. If Diane Johnson had informed me that she had an arrangement with her son regarding the purchase of the vehicle, and that she just wanted the car back, I would never have sent a teletype asking that the vehicle be located. Such teletypes are restricted to criminal matters only. I do not know whether, in fact, Diane Johnson had such an arrangement with her son.

    10. On September 6, 2000, I telephoned Diane Johnson at her home to speak with her regarding the investigation. During this conversation I questioned Diane Johnson as to her motive for telling me that she wanted her son arrested for taking her vehicle without her permission. I told Diane Johnson that if she gave a false statement to the State Police during the course of an official investigation, that she could be arrested. I don't recall whether I asked her about an arrangement with her son regarding the purchase of the vehicle, but I clearly recall her telling me that she still wanted her son arrested for taking the vehicle without her permission.

She told me that the information which she had given me in the initial written statement was accurate.

11. Based on all of the information which I had received up until that time, I determined that probable cause existed to support the arrest of Keith Johnson for taking a motor vehicle without the owner's permission. I completed an arrest warrant affidavit charging Keith Johnson with taking a motor vehicle without the owner's permission. I did not include statements in the affidavit describing Keith Johnson's claim that he had an arrangement to buy the vehicle from his mother. According to what I knew, there was no such arrangement, and I did not think it necessary to include the suspect's uncorroborated account of events in the arrest warrant affidavit. I did not state in the arrest warrant affidavit that Diane Johnson did not want her son arrested for this crime. Such information, even if it was accurate, is simply irrelevant to whether or not there existed probable cause to support such an arrest. Even so, I had a sworn written statement from the victim indicating that she did want her son arrested, and I was aware of nothing which changed that position.

12. Sergeant Sam Izzarelli reviewed and notarized my arrest warrant application on September 7, 2000. The warrant was approved by the Superior Court on September 15, 2000, following which the State Police sent out a wanted person teletype for Keith Johnson on September 19, 2000.

13. On September 25, 2000, Keith Johnson was taken into custody by Trooper Michael Hearn on the basis of this outstanding warrant as well as a second warrant originated by the Manchester Police Department charging Keith Johnson with Failure to Appear in the First Degree for an underlying charge of Larceny in the First Degree. While being processed for the

State Police warrant, Trooper Clifford Labbe found Johnson in possession of a stolen check from an another unrelated investigation. He was charged with this offense as well. A $10,000 cash bond was set by my supervisor. Keith Johnson was unable to make this bond. As a result, he was held for arraignment at the next session of the Superior Court.

      14. In accordance with State Police procedure, I completed an investigative report into the entire incident, and filed this report along with a copy of the arrest warrant affidavit in the Reports and Records Division at State Police headquarters. A copy of the investigative report and arrest warrant affidavit are attached to this affidavit at Tabs A and B, respectively.

      15. I have read the foregoing affidavit consisting of five pages. It is true and accurate to the best of my knowledge.

_____
Affiant

Subscribed and sworn to before me this _____ day of _____, _____.

_____
~~Notary Public~~/Commissioner of the Superior Court